**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 01-50803
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

CHARLES DOUGLAS MESSERVEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Western District of Texas, San Antonio Division
_____

December 30, 2002

Before DAVIS, BENAVIDES, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Petitioner Charles Douglas Messervey appeals his conviction and sentence for five counts of mail fraud and two counts of money laundering in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1357. Messervey challenges his conviction on grounds that his due process rights were violated when the trial judge failed to grant his attorneys a continuance at trial for additional preparation time. He also argues that his conviction is flawed because the trial

1

judge did not *sua sponte* order a mental competency exam. Messervey finally contends that even if his conviction is valid, his sentence is not, arguing both that his sentencing score was improperly calculated, and that the district court abused its discretion in upwardly departing from the prescribed sentencing range.

We find Messervey's challenges to his conviction lack merit, and now affirm the appellant's conviction. But because the district court abused its discretion in upwardly departing from the prescribed United States Sentencing Guidelines (USSG) range in calculating Messervey's sentence, we vacate his sentence and remand this case to the district court for re-sentencing.

## I.  Factual and Procedural Background

Messervey's leadership and participation in four distinct fraudulent schemes formed the basis of his conviction for mail fraud and money laundering. The relevant details of each scheme are as follows:

### A.   1993 Automobile Fraud

On December 12, 1993 Messervey reported his 1993 Ford Ranger truck missing from where he parked it at a local mall. He then filed a claim with his insurer, Farmer's Insurance Co. (Farmer's), and received $12,600 on the claim. Following an anonymous tip, Farmer's located the truck a month later in front of Messervey's apartment, bearing no signs of having been started without the ignition key, or of being stripped for parts, both of which would

be typical of stolen vehicles.  The apartment manager and security guard reported seeing Messervey drive the truck after it had been reported stolen.  Messervey denied owning the truck, and it was ultimately seized by the insurance company.

*B.    1994 Art Fraud*

In October 1994 Messervey convinced his live-in girlfriend, Deanna Robertson, to enter into an art fraud scheme.  Messervey "sold" nine paintings to Robertson for what receipts claimed was $230,000, even though Robertson earned just $35,000 per year.  Robertson took out a $120,000 insurance policy with Farmer's to insure these paintings.  Messervey and Robertson then staged a break-in at Robertson's home, in which they claimed the paintings had been stolen, and filed a $170,000 claim with Farmer's for the paintings, $50,000 over the policy value.  In fact, at least three of the paintings remained in Robertson's basement a month after the burglary, and three were found in Messervey's home two years after the alleged theft.  When Farmer's investigators demanded Robertson's financial records before paying out the claim, Robertson became nervous and withdrew her claim.

*C.    1996 Art Fraud*

From November 1995 to January 1996 Messervey had a photographer produce prints of twelve of his oil paintings for $19,000.  He paid for these prints out of the $34,500 he obtained from David Mendietta, his hairstylist, who believed he was

3

investing in the production of the prints. Messervey then took out $4 million worth of insurance for the paintings from the North Brook Insurance Company (North Brook).

In May 1996 Messervey informed Mendietta that he would not get any of his investment back unless Mendietta helped him stage a heist of the prints with the aim of filing a false insurance claim. To stage the theft, Messervey and his friend Brad Dublon destroyed the prints that had been produced. Then, while Messervey was out of town with his friend Larue Hedrick, Mendietta entered Messervey's apartment with keys given to him by Messervey. He placed empty boxes in the apartment to make it appear that prints had been stolen from the boxes, and left a note confessing to destroying the works because Messervey had not repaid him his money.

Upon returning home Messervey called the police and claimed $8 million in artwork had been stolen. At Messervey's behest his friend Carolyn Coe falsely told investigators that she had observed the alleged burglary by Mendietta. Messervey then claimed the maximum $4 million due under the policy from North Brook. When North Brook refused to pay, Messervey brought a civil action against the company seeking $4 million in losses, and $ 5 million punitive damages, all trebled, for a total suit demand of $27 million. At civil trial North Brook argued it was at most

4

responsible for $18,000, the replacement costs of the prints.[1]

*D.     1997 Crime Victims Compensation Fund Fraud*

On August 11, 1996 Messervey went to the emergency room with a head wound.  The next day he called Bexar County, Texas police and reported that he had been assaulted by Mendietta.  The policeman investigating the case found no evidence of an assault.  Nine months later in May 1997, Messervey filed a claim with the Texas Crime Victims Compensation Fund requesting $25,000 for missed work due to emotional trauma and medical expenses.  The fund paid out that claim.

Based on these four fraudulent schemes, Messervey was charged and convicted of five counts of mail fraud and two counts of money laundering in the District Court for the Western District of Texas.  The Pre-Sentencing Report (PSR) indicated Messervey had five criminal history points, resulting in a Criminal History Category of III, and a USSG sentencing range of 70 to 87 months.  Citing the failure of the USSG grouping rules to sufficiently reflect Messervey's participation and direction in four separate schemes, and Messervey's exploitation of vulnerable persons as accomplices and victims of his crimes, the district judge upwardly departed from the prescribed range, sentencing Messervey to 220 months incarceration.  Messervey now timely appeals.

**II.  Challenges to the Conviction**

---

[1]The outcome of this trial is not in the record.

*A.   Denial of Trial Continuance*

Messervey first challenges his conviction on grounds that the trial judge violated his due process rights by denying him a trial continuance to allow his attorneys additional preparation time. While the trial judge did grant Messervey four continuances, delaying the start of trial from July 6, 1998 to August 2, 1999, appellant argues that the denial of a fifth trial continuance to allow his attorneys to fully review government discovery was in error.[2]

We review a district court's denial of a continuance for an abuse of discretion, and will order a new trial only where the defendant demonstrates serious prejudice. United States v. Kelly, 973 F.2d 1145, 1147-48 (5th Cir. 1992). We employ a totality of circumstances test to decide whether there was an abuse of discretion. Id. at 1148. Factors we consider when determining whether a continuance was warranted are: the amount of time available for preparation; defendant's role in shortening the time needed; the likelihood of prejudice from denial; and the

---

[2]   The original scheduled trial date was July 6, 1998. Messervey received a 2 month continuance for additional attorney preparation, with a new scheduled trial date of September 14, 1998. Given new charges added on August 5, 1998 the court granted a second continuance to November 2, 1998. Because of a new charge added on September 18, 1998, the court granted a third defense continuance to April 12, 1999. Messervey then switched his trial attorney twice, first one public defender to another in early March 1999, then to a privately paid attorney on April 1, 1999. Because of the new attorney on the case, a fourth trial continuance to August 2, 1999 was granted.

6

availability of discovery from the prosecution.  <u>United States v. Uptain</u>, 531 F.2d 1281, 1286-87 (5th Cir. 1978).

We believe that district court did not abuse its discretion in denying Messervey a fifth continuance.  Appellant obtained continuances totaling over a year from the original trial date, which we believe gave his attorneys more than adequate time to prepare a defense.  Messervey argues that because he changed attorneys in April 1999, the four months his new attorneys had to prepare for the August 1999 trial was inadequate.  We find this argument unpersuasive for two reasons.

First, as we noted in <u>Uptain</u>, we consider whether benefits from attorneys other than trial counsel accrued to defendant in determining whether a trial continuance for additional preparation is warranted.  <u>Id.</u> at 1287.  Here, Messervey benefitted from the nearly one year of preparation done by his fired public defender, as well as from the work of his civil attorney in his suit against North Brook.  The time spent and work done by these attorneys when aggregated with the four months given to his new counsel to prepare for trial indicate the trial judge allocated more than enough time for Messervey to prepare an adequate defense.

Second, and more critically, Messervey has failed to show how he was prejudiced by the denial of the continuance.  The only prejudice Messervey alleges is that his attorneys were unprepared to elicit useful information from an Assistant U.S. Attorney (AUSA) the defense subpoenaed.  In fact, the AUSA was extensively

7

questioned by the trial judge *in camera* to determine whether he had any relevant evidence, and Messervey's counsel and the judge agreed that the AUSA did not. Thus, any lack of preparation by Messervey's attorney for questioning the AUSA did not hurt Messervey. As Messervey demonstrates no prejudice, the trial judge did not abuse his discretion in denying the continuance.

*B.   Mental Competency Exam*

Messervey next argues that the trial court erred by not ordering a sua sponte mental competency exam of Messervey as allowed by 18 U.S.C. § 4241(a).[3] The decision whether to grant a mental competency exam rests in the sound discretion of the trial court, and we review only for an abuse of discretion. United States v. Davis, 61 F.3d 291, 304 (5th Cir. 1995). To determine whether there is "reasonable cause" to doubt a defendant's competence, we consider: (1) any history of irrational behavior, (2) the defendant's demeanor at trial, and (3) any prior medical

---

[3]That section states:

> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or **shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent** to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4241(a) (2002) (emphasis added).

8

opinion on competency. Id.

Messervey offers no evidence of either prior irrational behavior on his part, or of medical opinions given to the trial judge that should have led the judge to question Messervey's competence. Rather, he argues that several minor incidents at trial should have created "reasonable cause" for the trial judge to order a sua sponte mental competency exam. These episodes were: (1) the defense attorney telling the trial judge that Messervey needed a longer recess to consult with his doctors over the dosage of medicines needed to combat his manic depression; (2) the defense attorney telling the trial judge that Messervey threatened a witness because his medicines were wearing off; and (3) the trial judge's quip to defendant that he needed an "insanity hearing" after Messervey debated the quality of his representation.

None of these incidents are sufficient to make the trial judge's failure to order a competency exam an abuse of discretion. We have previously explained that where trial episodes alone constitute the evidence of a defendant's incompetence, those episodes need to be "sufficiently manifest" for a trial judge to be required to sua sponte order a mental competency exam. Id. at 304 (citing Zapata v. Estelle, 588 F.2d 1017, 1021 (5th Cir. 1979)). The reason is that we cannot expect a busy trial judge to aggregate information not clearly connected to the competence of the defendant to require a mental exam not requested by either party. Zapata, 588 F.2d at 1021. Applying this rule in Davis, we

9

concluded that a defendant's ingesting 50 anti-depressant pills in a suicide attempt during the course of trial, without a previous history of irrational behavior or a medical opinion suggesting incompetence, was insufficiently manifest to make the trial court's failure to sua sponte order a mental competency exam an abuse of discretion. Davis, 61 F.3d at 304. If a suicide attempt during trial was not "sufficiently manifest" to require a trial judge to order a competency exam, certainly these off-the-cuff references to defendant's depression are insufficient to make the judge's failure to order an exam an abuse of discretion.

### III. Challenges to the Sentence

*A. Amount of Loss Calculation*

Messervey first challenges his sentence by arguing that the district court misapplied the USSG in calculating the amount of loss from his 1996 art fraud. The district court applied USSG § 2F1.1, which stated that the intended loss of a fraud is to be used for sentencing purposes where that figure is greater than the actual loss.[4] U.S. Sentencing Guidelines Manual § 2F1.1, cmt. n.8 (2000). The district judge determined that the intended loss from the scheme was $4 million, the amount of the fraudulent claim Messervey filed with North Brook, and used this figure for

---

[4]This section of the USSG was eliminated by Amendment 617 effective November 1, 2001. That amendment combined § 2F1.1 and § 2B1.1, among other things. U.S. Sentencing Guidelines Manual Supplement to Appendix C, Amendment 617 (November 1, 2002).

sentencing purposes.

We review the district court's loss determination used under a clearly erroneous standard; so long as the finding is plausible in light of the record as a whole, it is not clearly erroneous. United States v. Sowels, 998 F.2d 249, 251 (5th Cir. 1993). Messervey argues the district court clearly erred by using an amount of loss figure that was factually impossible for him to obtain. To support his argument Messervey points to United States v. Santiago, 977 F.2d 517 (10th Cir. 1992), a case factually similar to this one. There the Tenth Circuit held that under USSG § 2F1.1, where an intended loss is greater than the potential loss of a fraud, the potential loss forms the upper limit of the amount of loss figure. Id. at 526. In Santiago this meant that the correct amount of loss figure in a staged auto theft fraud was the blue book value of the car, which the court reasoned was the maximum the insurer would pay on the policy, rather than the much higher amount of Santiago's filed claim. Id. at 525-26. Based on Santiago Messervey reasons that since the insurance policy allowed North Brook to pay the $18,000 replacement costs of the prints, this is the most North Brook would have paid on the policy, and hence the upper limit on the amount of loss for sentencing.

Unfortunately for Messervey his case does not arise in the Tenth Circuit. We have previously held that we do not follow the Tenth Circuit approach to USSG § 2F1.1 used in Santiago. Rather, our interpretation is that "nothing in § 2F1.1 ... requires the

11

defendant be capable of inflicting the loss he intends." United States v. Edwards, 303 F.3d 606, 645n.27 (5th Cir. 2002)(citing United States v. Ismoila, 100 F.3d 380, 396 (5th Cir. 1996)). Accordingly, the district court did not clearly err in finding that Messervey intended a loss of $4 million, even if it was not within his power to achieve such a loss.

B. *Organizer of Criminal Activity*

In his next point of error Messervey argues that the district court erred when it found that those Messervey exploited to his advantage in his fraud schemes were "participants" in the offenses.[5] That designation allowed four offense level points to be added under § 3B1.1.[6] Comment 1 to that section defines a "participant is a person who is criminally responsible for the commission of an offense, but need not have been convicted." U.S. Sentencing Guidelines Manual § 3B1.1(a), cmt. n.1 (2002). Messervey argues that because the PSR described these people as "victims," they cannot be participants under the terms of § 3B1.1.

We review the district court's factual findings used for sentencing for clear error. Ismoila, 100 F.3d at 394. Here no such error is present. The very section of the PSR Messervey cites

---

[5]Messervey's accomplices included his former girlfriend Deanna Robertson, his hairdresser David Mendietta, and friends Brad Dublon, Larue Hedrick, and Carolyn Coe.

[6]USSG § 3B1.1 says that the offense level increases by four if "the defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive." U.S. Sentencing Guidelines Manual § 3B1.1(a) (2002).

12

also describes Messervey's cohorts as "participants" in his fraudulent schemes.  A quick examination of these individuals' roles confirms this assessment.  Mendietta staged a break in and lied to the police; Dublon aided Messervey in destroying prints; Hedrick provided an alibi for Messervey during the Mendietta break in by accompanying him to Corpus Christi; Robertson filed a fraudulent claim with Farmer's; Coe lied under oath to having observed a break-in.  These persons were "participants" in Messervey's schemes in the true sense of the term.  Messervey's appeal on this point lacks merit.

### C.  Upward Departures

Messervey finally argues that the district court erred in upwardly departing from his sentencing score.  The district judge upwardly departed from the prescribed guideline range of 70 to 87 months to a 220 month sentence.  We review a district court's upward departure from the sentencing guidelines for an abuse of discretion.  United States v. Nevels, 160 F.3d 226, 229 (5th Cir. 1998).  There is no abuse of discretion where the judge both provides acceptable reasons for the departure, and the degree of departure is reasonable.  Id.  Departures from the sentencing guidelines are allowed only where, considering the guidelines, policy statements and official commentary, there is an aggravating or mitigating circumstance of a kind or degree not adequately taken into account in the guidelines.  Koon v. Powell, 518 U.S. 81, 92-93

13

(1996) (citing 18 U.S.C. § 3553(b)).

The district judge offered two reasons for this upward departure.  First, the trial judge cited USSG § 3D1.3, comment 4 as justifying an upward departure in Messervey's sentence.  That comment explains that where offenses are grouped together, sometimes one offense goes completely unconsidered for sentencing purposes.  For example, it notes that where rape occurs with a robbery, rape forms the base sentencing offense, as the more serious charge.  Because robbery is not an aggravating factor in the rape sentencing table, the robbery is not weighed when arriving at a sentence.  Thus, the comment explains, a large financial loss in a robbery accompanying rape might be grounds for an upward departure.  U.S. Sentencing Guidelines Manual § 3D1.3, cmt. n.4 (2002).  The district court reasoned this example was applicable here.  It held that the four separate schemes were not accounted for because adding the value of all four schemes together resulted in the same penalty as if Messervey had just committed the 1996 art fraud.[7]

While that is true, the district court's analysis misunderstands the cited comment.  In the rape-robbery example the

---

[7]The PSR added the value of all four frauds as follows: $12,600 (pickup truck fraud) + $125,000 (1993 art fraud) + $4,000,000 (1996 art fraud) + $25,000 (victim's compensation fraud) = $4,162,600. Because the amount of loss tables in § 2F1.1 add the same offense level points for schemes in which the loss totals between $2.5 million and $5 million, the same number of offense level points were added for the four schemes aggregated as for the 1996 art fraud alone.

14

robbery would not be accounted for at all by a sentencing court in reaching a sentence, hence making an upward departure appropriate. By contrast, here the pecuniary loss from each of the four frauds was considered in arriving at the amount of loss figure of § 2F1.1.[8] The fact that one scheme was several magnitudes larger than the other schemes does not change the fact that all the smaller schemes were included in arriving at the offense total. As all four schemes were included in the guidelines amount of loss total, it was an abuse of discretion to upward depart in reliance on comment 4 to § 3D1.3.

The district judge's second stated reason for a sentencing upward departure was the failure of the USSG to adequately account for Messervey's exploitation of "vulnerable individuals" as both accomplices and victims in his schemes. Messervey's frauds did use and depend upon help he received from people he manipulated into helping him. But, two separate provisions accounted for the presence of multiple vulnerable victims/accomplices in a crime, and both of these provisions were considered in Messervey's PSR.

First, USSG § 3B1.1(a) allows for an increase in the offense level of 4 levels if "the defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive." U.S. Sentencing Guidelines Manual § 3B1.1(a)

---

[8]The PSR also added two offense level points pursuant to § 2F1.1(b)(2) to reflect the "extensive planning" and "multiple victims" of Messervey's frauds.

15

(2002).  Messervey's PSR applied this section, and added four offense level points to account for the fact that Messervey was a mastermind of a criminal enterprise that employed several other people.  Second, USSG § 3A1.1(b) allows for a two level increase in the offense level "if the defendant knew or should have known the victim of the crime was a vulnerable victim."  U.S. Sentencing Guidelines Manual § 3A1.1(b) (2002).  A vulnerable victim is one who is "unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct."  U.S. Sentencing Guidelines Manual § 3A1.1(b), cmt. n.2 (2002).  Messervey's PSR applied this section to consider whether Mendietta, a homosexual, was a vulnerable victim.  It concluded that while Mendietta had been exploited based on his sexual orientation and mental condition, he did not meet the requirements for a § 3A1.1(b) sentence enhancement.[9]

The district judge adopted these factual findings; nevertheless, he concluded that an upward departure was warranted because in his opinion the USSG sections dealing with the exploitation of others for criminal purposes were inadequate.  But where a sentencing factor has been included in the USSG, a departure is allowed only where there is an aggravating or

---

[9]The PSR did not consider whether the other victims/accomplices, Robertson, Dublon, Coe or Hedrick, were vulnerable victims.  But neither the reasons given by the district court nor the government offer any reasons why these persons should have been considered "vulnerable victims."

mitigating circumstance of a kind or degree not contemplated by the Guidelines. <u>Koon</u>, 581 U.S. at 92-93. No such circumstances exist here. There were two provisions of the USSG specifically tailored to deal with the district court's concern about the crime as it related to the participant/victims involved, and these provisions were applied in the PSR. Nothing about Messervey's relationship with the participant/victims was of a "kind or degree" outside the ambit of these two sections. Accordingly, it was an abuse of discretion to order an upward departure on these already considered and weighed factors, and we must vacate appellant's sentence and remand this case for re-sentencing by the district court.

## IV. Conclusion

As appellant Messervey's challenges to his conviction lack merit, his conviction is AFFIRMED. Because the district court abused its discretion by upwardly departing from the prescribed USSG sentencing range, however, Messervey's sentence is VACATED, and the case is REMANDED for re-sentencing consistent with this opinion.

AFFIRMED IN PART; VACATED IN PART; and REMANDED.