# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 16, 2012

No. 11-40376

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ANTONIO FLORES-MARTINEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Appellant Antonio Flores-Martinez ("Flores-Martinez") was convicted under 8 U.S.C. § 1326(a) and (b)(1) for being found unlawfully present in the United States after previous deportation subsequent to a felony conviction. On appeal, he challenges his conviction on the grounds that: (1) the district court violated his due process right to a fair trial when it denied him a psychological/psychiatric evaluation for competency purposes and failed thereafter to *sua sponte* conduct a hearing on the question of his competency to stand trial; and (2) the district court denied him his constitutional right to testify in his defense. For the reasons discussed below, we AFFIRM.

No. 11-40376

## FACTUAL BACKGROUND

In 2008, Flores-Martinez, a citizen and national of Honduras, was deported from the United States after being convicted of the felony of possession of a weapon for an unlawful purpose. In 2009, Flores-Martinez was apprehended by immigration agents in Laredo, Texas and charged with illegal reentry after deportation. While in custody, he made a claim to possible derivative citizenship through his deceased father. Immigration officials investigated his claim but ultimately determined that it was without merit.[1] Subsequently, because delays in the prosecution of his case had led to Flores-Martinez having "already spent more time in federal custody than he would have received had he been convicted," his case was dismissed and he was again deported to Honduras.

Less than three months later, Border Patrol Agents found Flores-Martinez crossing the Rio Grande River. As a result, Flores-Martinez was charged under 8 U.S.C. § 1326(a) and (b)(1) with being found unlawfully present in the United States after deportation subsequent to a felony conviction.

Over the course of proceedings, Flores-Martinez was disruptive in certain ways and "difficult" with his counsel. During most of this time, his counsel and the court agreed that Flores-Martinez's conduct was the result of his fervent, though legally incorrect, belief that he was entitled to citizenship due to his father's service in the United States military during World War II.

---

[1] According to the government's motion *in limine*, during the prosecution of Flores-Martinez in 2009 for illegal reentry, he claimed derivative United States citizenship based upon his father's military service during World War II. According to the government, "[r]ecords indicate that the Defendant's father served as a Merchant Marine from November 1944 to August 1945 and was Honorably Discharged. There is no indication that his father ever applied for or was granted United States citizenship based upon his military service or for any other reason. The Defendant was not able to prove any valid claim of United States citizenship[.]"

No. 11-40376

At a pretrial conference in the district court, defense counsel for Flores-Martinez orally moved for and was granted an unopposed continuance because Flores-Martinez was continuing to be "extremely difficult" and uncooperative with his counsel. Defense counsel stated that during the continuance, he intended to procure at his own expense an independent mental health evaluation of Flores-Martinez because

> I feel it's important, Your Honor, before I turn around and end up in a situation where I have no other choice but to proceed with trial knowing full well that he's going to end up with a lot, lot, lot more time than he should otherwise get if he was to decide to plead guilty.

Thereafter, Dr. David Morón ("Dr. Morón"), a psychiatrist, met with Flores-Martinez for approximately fifteen to twenty minutes before Flores-Martinez walked out of the evaluation "angry, aggressive, [and] refusing to speak or answer any additional questions."

At the next pretrial conference, defense counsel represented that Flores-Martinez "refuse[d] to cooperate with anything in this particular case. He believes that it's a case that should be dismissed, period, 100 percent, with nothing more, and on that basis, Your Honor, it's very difficult to talk to him or to prepare for trial or anything." Defense counsel further stated that Dr. Morón's report had indicated that Flores-Martinez did not appear to have any mental health problems but that Dr. Morón could not be completely certain because he had not been able to properly evaluate him.

At the conference, the district court addressed Flores-Martinez and directed questions to him about his mental health history. Flores-Martinez responded in the negative to the district court's question of whether he had ever been treated for any mental illness or addiction to drugs of any kind, and whether he was under the influence of any medication that could inhibit his ability to understand the proceedings. In addition, Flores-Martinez offered that he was "a person that considers himself to be healthy in mind." Furthermore,

No. 11-40376

Flores-Martinez answered the district court's question affirmatively regarding whether he understood that he was being accused of the crime of being an alien unlawfully found in the United States.

The district court then addressed defense counsel and asked if Flores-Martinez had been able to assist in his defense, to which defense counsel responded, "very little." Following up, the district court asked "whether he has shown any signs of mental health disorder that would make it difficult for him to assist you in his defense," to which defense counsel responded, "[s]pecifically in regards [*sic*] to that, no, Your Honor, there has been no problem. . . . Specifically to the issue of competency [to stand trial], I believe he is competent."

The next day, the district court resumed the pretrial conference, at which time defense counsel for Flores-Martinez—now arguing that his client may be mentally incompetent—made an oral motion requesting that Flores-Martinez be given a court-ordered mental health evaluation "on the basis of his inability to provide any assistance to counsel." The district court observed that it saw "something different between being unable and unwilling, and that's the main thing here." In addition, the district court noted that it did not "see anything here that indicates that he is not competent. I think that [his] . . . being emotional or overemotional is not an element of – of competency as far as I'm concerned. Unless a psychologist . . . or especially a psychiatrist has opined that he's incompetent and has . . . a medical basis for that diagnosis, then I'm – I'm ready to proceed[.]" Then, the district court reviewed Dr. Morón's report and noted that because Dr. Morón had already tried to evaluate Flores-Martinez only to be refused, any additional attempt would likely be equally futile. In response, defense counsel suggested that Flores-Martinez may be less recalcitrant if he were sent away for a court-ordered evaluation to be conducted at one of the out-of-state federal prison facilities. The district court denied the motion.

4

No. 11-40376

Five days later, the case proceeded to jury trial, at the beginning of which the district court summarized Dr. Morón's report and determined that nothing in the record indicated any reason to doubt Flores-Martinez's competency to stand trial.  Then, the district court warned that if Flores-Martinez was disruptive during the trial, he would be removed from the courtroom.  Immediately, Flores-Martinez stated as follows:

> Your Honor [*sic*] supposed to be honest with the jury – the jury and all that.  You guys dropped the charges already.  Tell the jury that my father fought for this country.  My father's a U.S. veteran.  That's why I'm complaining.  You guys sent me to Honduras just to lose my arm.  This is how you guys, you know, paid to [*sic*] my father.

The district court again warned Flores-Martinez against disrupting the proceedings, but Flores-Martinez retorted that because the judge was "not being honest . . . [w]ith the jury," he did "not want to be here anymore."  In response, the district court ordered that "the record reflect that the defendant has requested his absence from the courtroom," had Flores-Martinez removed, and informed the jury that "the defendant has requested that he not be in the courtroom during the trial, so we will be proceeding . . . [with the defendant] 'in absentia.'"  Subsequently, during a recess after the direct examination of a government witness, the district court brought Flores-Martinez into the courtroom to ask if he wanted to return for the remainder of the trial.  Flores-Martinez answered that he did.

When the government rested its case-in-chief, the district court recessed to permit defense counsel to confer with Flores-Martinez prior to putting on his case-in-chief.  During the recess, defense counsel requested to make a record to address the issue of whether Flores-Martinez would testify in his defense.  Defense counsel stated that Flores-Martinez wanted to testify but that he only

5

No. 11-40376

wanted to testify as to matters that had been excluded by the *limine* order granted on the government's motion:[2]

> I know that it's our case in chief next because the government has rested in this particular case. My concern is my client, Your Honor, he wants to testify. He wants to talk to the jury, but he wants to talk to the jury about what this Court has ordered liminied [*sic*] out, *and that's all he wants to talk about*, about the facts he feels he's entitled to, his right to be here in the United States because of the Army service of his father, the injuries, the service – connected injuries that he has with the military and things of that nature.

(emphasis added). Defense counsel then requested that the district court reverse its *limine* order so that the defense could present the information regarding why Flores-Martinez believed that he had a right to be in the United States and was not violating any laws. The district court denied the request to reverse its *limine* order, at which point the defense stated that it had nothing further to offer. However, when the district court began seating the jury in the courtroom, the following transpired:

> THE DEFENDANT: Your Honor, can I address the jury?
> THE COURT: Mr. Flores[-Martinez] –
> THE DEFENDANT: (Speaking Spanish.)
> THE COURT: – I'm asking the jury to please be seated. Mr. Flores[-Martinez] –
> THE DEFENDANT: (Speaking Spanish.)
> THE COURT: Please remove the defendant from the courtroom.
> THE DEFENDANT: My father is a Veteran of the second World War. Look how they have me.

---

[2] The government's motion *in limine* requested that the district court "issue an order precluding the Defendant and/or his attorney from questioning witnesses or eliciting testimony and offering any evidence to the jury, on direct or cross-examination, concerning: a) the dismissal of the Defendant's prior indictment alleging a violation of Title 8 U.S.C. § 1326 [the 2009 illegal reentry charge]; b) the citizenship or domicile of any of the Defendant's family members, specifically that the Defendant's father was not granted United States citizenship after his military service; and c) the Defendant's claim of fear of returning to Honduras."

No. 11-40376

Flores-Martinez was removed from the courtroom. The defense then announced that it had no witnesses or additional evidence to present and would rest its case.

Before the reading of the charge and outside the presence of the jury, Flores-Martinez was brought back into the courtroom and his counsel made a formal request on the record for a bill of exceptions permitting Flores-Martinez to testify to the court. The district court granted the bill of exceptions. However, Flores-Martinez refused to speak. As a result, defense counsel then asked to make a proffer instead with Flores-Martinez still in the courtroom, which the district court allowed, as follows:

> [T]he purpose of his testimony in this particular case is that he firmly believes that he is entitled to some citizenship because of what his father has done for this country.
>
> There is a situation that basically says a citizen is one that has given his allegiance to the United States. In this particular case, my client knows for a fact that his father gave his allegiance, 100 percent of it, to the United States government when he enlisted, when he enrolled in the military being a member of the armed forces during a period of time, Your Honor, of approximately five to six years during which this country was at war in the major World War II.
>
> He feels that because of the sacrifices that his father has done for this country in terms of fighting alongside with normal shoulder – soldiers, having received the benefits that he has otherwise received such as Veteran's benefits, medical treatment through the Veteran Administration, the fact that he was honorably discharged, the fact that he has always gotten a pension from the military as far as this is concerned in regards [*sic*] to his service, along with the facts that he has lived here in this country for a number of years – . . . since he was a young man – and I'm referring to my client, Mr. Flores[-Martinez], every time that I have mentioned "he" in this particular presentation – and that is what he wanted to get to the jury for the jury to understand and to see with the hope[ ] that the jury would be able to take that into consideration in determining whether he is here in this country or whether he was found in this country and his status being illegal.

No. 11-40376

After the proffer was made, defense counsel made an oral motion for an acquittal on the grounds that the government had failed to present sufficient evidence to prove its case. The district court denied the motion, and the remainder of the trial proceeded without incident.

The jury convicted Flores-Martinez, and the district court sentenced him within the Sentencing Guidelines range to sixteen months imprisonment and three years supervised release. This timely appeal followed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

A.     Mental Competency[3]

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975); *see also Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). Accordingly, "the conviction of an accused person while he is legally incompetent violates due process." *Pate v. Robinson*, 383 U.S. 375, 378 (1966) (citation omitted).

In addition to this substantive right, the criminal defendant has a procedural due process right that guarantees "procedures adequate to guard an accused's right not to stand trial or suffer conviction while incompetent."

---

[3] While this appeal was pending, Flores-Martinez completed his imprisonment term and was removed from the United States to Honduras. Shortly before oral argument, the Government contended that Flores-Martinez's absence from the United States mooted his appeal regarding the competency hearing. Flores-Martinez's challenge to his conviction based upon the claim that the court should not have proceeded to trial without holding a competency hearing is not mooted by his deportation or sentence completion. *See United States v. Villanueva-Diaz*, 634 F.3d 844, 848-49 (5th Cir.), *cert. denied*, 132 S. Ct. 110 (2011); *United States v. Lares-Meraz*, 452 F.3d 352, 355 (5th Cir. 2006) (per curiam) ("To the extent a defendant appeals his conviction, his appeal is not moot simply because his term of imprisonment has expired." (citation omitted)). In any event, his counsel has subsequently advised us that Flores-Martinez has again been found present in the United States; seemingly, the question of mootness is itself moot.

*Holmes v. King*, 709 F.2d 965, 967 (5th Cir. 1983) (citations omitted). Depending on whether a case involves a procedural competency claim or a substantive competency claim, different standards are applicable:

> To show a substantive violation, an accused must prove an inability either to comprehend or participate in the criminal proceedings. . . . To show a procedural violation, the accused must point to evidence before the trial court that raised a bona fide doubt about competency. Once such a doubt is known to the trial court, it must conduct an adequate hearing.

*Id.*

Flores-Martinez's defense counsel made an oral motion for a court-ordered mental competency evaluation in an out-of-state federal facility, but did not move for a mental competency hearing. The statutory directive contained in 18 U.S.C. § 4241 provides that a criminal defendant whose competency is in question may be subjected to a mental competency hearing. If neither the defendant nor the government moves for such a hearing, § 4241(a) requires the district court to *sua sponte* conduct a hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." In addition, under § 4241(b), the court "may order" that a mental competency examination be conducted on the defendant prior to the competency hearing.

An abuse of discretion standard applies to the district court's failure to *sua sponte* conduct a mental competency hearing and its denial of the defense's motion for a mental competency evaluation.[4] *United States v. Ruston*, 565 F.3d

---

[4] If the district court had gone further and made an ultimate competency finding, we would review that factual finding for clear error. *See United States v. McKnight*, 570 F.3d 641, 648 (5th Cir. 2009) ("Whether a defendant 'suffers from a mental disorder or incapacitating mental illness is a question of fact reviewed under the clearly erroneous standard' but this Court takes a 'hard look' at the ultimate competency finding." (citing *Moody v. Johnson*, 139

No. 11-40376

892, 901 (5th Cir. 2009) ("Whether the district court erred in not *sua sponte* holding a competency hearing is reviewed for abuse of discretion."); *United States v. Messervey*, 317 F.3d 457, 463 (5th Cir. 2002) (citing *United States v. Davis*, 61 F.3d 291, 304 (5th Cir. 1995) ("Whether 'reasonable cause' exists to put the court on notice that the defendant might be mentally incompetent is left to the sound discretion of the district court." (citation omitted))); *United States v. Williams*, 998 F.2d 258, 263 (5th Cir. 1993). We have consistently observed that "'[t]he district court is in the best position to determine the need for a competency hearing.'" *Ruston*, 565 F.3d at 901 (citation omitted). However, "[i]f the trial court received evidence, viewed objectively, that should have raised a reasonable doubt as to competency, yet failed to make further inquiry, the defendant has been denied a fair trial." *Mata v. Johnson*, 210 F.3d 324, 329 (5th Cir. 2000).

The Supreme Court has held that there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed," noting that "the question is a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Drope*, 420 U.S. at 180. However, it is clear that "[i]n determining whether the court should order a mental competency hearing, the court must consider three factors: (1) the existence of a history of irrational behavior, (2) the defendant's demeanor at trial, and (3) prior medical opinion on competency." *Ruston*, 565 F.3d at 902 (citing *Messervey*, 317 F.3d at 463); *see also Davis*, 61 F.3d at 304 (citing *Davis v. Alabama*, 545 F.2d 460, 464 (5th Cir. 1977)). Although all three factors are "relevant in determining whether further inquiry is required," under certain circumstances, "even one of these factors standing alone" may be sufficient. *Ruston*, 565 F.3d at 902 (citation omitted).

---

F.3d 477, 482 (5th Cir. 1998))).

No. 11-40376

However, in regard to the factor of the defendant's demeanor at trial, we have expressly held that "where trial episodes alone constitute the evidence of a defendant's incompetence, those episodes need to be 'sufficiently manifest' for a trial judge to be required to sua sponte order a mental competency exam." *Messervey*, 317 F.3d at 463 (citing *Davis*, 61 F.3d at 304). For example, in *Messervey*, we found that the trial court did not abuse its discretion in refusing to *sua sponte* conduct a competency hearing where the only suggestions of reasonable cause to doubt the defendant's competency were a few minor trial episodes. *Id.*

Moreover, we have explicitly recognized that due process "does not mandate a full-blown hearing every time there is the slimmest evidence of incompetency." *Curry v. Estelle*, 531 F.2d 766, 768 (5th Cir. 1976) (per curiam) (citation omitted); *see also United States v. Horovitz*, 584 F.2d 682, 683 n.3 (5th Cir. 1978) (per curiam). Indeed, procedural due process only requires that the procedures be "'adequate' to resolve the issue raised," and what is "adequate" "flexes with the fact matrix in which it arises." *Curry*, 531 F.2d at 768.

Here, Flores-Martinez argues that the district court should have ordered a mental health examination and then *sua sponte* conducted a competency hearing because there was reasonable cause to believe that he might be incompetent to stand trial. For support, he points to: (1) his demeanor and behavior in the courtroom; (2) his aggressive, hostile, and volatile encounters with his counsel; (3) the lack of any prior medical opinion that he was competent because the sole attempt at a mental health evaluation by Dr. Morón was inconclusive; (4) the expressed intention to seek a mental health evaluation of him by his defense counsel from the 2009 illegal reentry case based on his inability to assist in his own defense; and (5) defense counsel's belief that he did not appear to be able to assist in his own defense or make appropriate choices and decisions about how to proceed below.

11

No. 11-40376

The record does not demonstrate any reasonable cause that would warrant doubting Flores-Martinez's mental competency to stand trial.  Rather, it reveals an angry individual refusing to cooperate with and provide assistance to his defense counsel because he disagrees with the prosecution for a rational—albeit legally incorrect—reason.  As the district court pointedly noted, there is "something different between being unable and unwilling" to assist counsel.  Our precedents have concluded likewise, expressly holding that "[a] defendant who has it 'within his voluntary control to . . . cooperat[e],' is not incompetent merely because he refuses to cooperate."  *United States v. Simpson*, 645 F.3d 300, 306 (5th Cir.), *cert. denied*, 132 S. Ct. 541 (2011) (quoting *United States v. Joseph*, 333 F.3d 587, 589 (5th Cir. 2003)).

The majority of Flores-Martinez's inappropriate outbursts at trial regarded his father's military service for the United States and why he felt that he was being wrongly and unjustly prosecuted.  His conduct, while angry and inappropriate, was not divorced from reality.  Each time he was questioned by the district court, his responses demonstrated that he fully understood the nature of the proceeding.  The basis for his ire—while legally incorrect—is not irrational:  he believed that his father's military service to this country should have led to citizenship for his father and, therefore, him.  We conclude that the district court did not err by denying the defense's motion for a court-ordered mental competency evaluation and by not *sua sponte* conducting a mental competency hearing thereafter.

B.     Right to Testify

Flores-Martinez argues that he was deprived of his constitutional right to testify. As noted above, at the relevant time, Flores-Martinez's defense counsel informed the district court that Flores-Martinez wanted to testify, but that "he wants to talk to the jury about what this Court has ordered liminied [*sic*] out, *and that's all he wants to talk about*." (emphasis added).   On appeal, Flores-

Martinez does not challenge the district court's refusal to reconsider its exclusion *in limine* of certain evidence or the propriety of the exclusion of that evidence. Instead, he argues that the district court's rulings amounted to a deprivation of his right to testify and that, had he been permitted to testify, (1) he could have testified as to matters other than those excluded by the *limine* order, and (2) the jury would have had a chance to "'eyeball' him and to judge his demeanor and his mental state." According to Flores-Martinez, had the jury "'eyeball[ed]' him" while he testified, the jury could have formed reasonable doubt as to whether Flores-Martinez had the requisite mental state for conviction.

In response, the government argues that the district court did not prevent Flores-Martinez from testifying at trial. Rather, the government maintains that the district court did nothing more than uphold its order granting the government's motion *in limine* by prohibiting Flores-Martinez from testifying regarding matters deemed irrelevant to the proceedings. In addition, the government maintains that the evidence in the case overwhelmingly established Flores-Martinez's guilt, and that the excluded "evidence regarding his father was no defense to the charges."

It is well established that "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Harris v. New York*, 401 U.S. 222, 225 (1971); *see, e.g., Rock v. Arkansas*, 483 U.S. 44, 49-53 (1987); *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) ("A criminal defendant has a constitutional right to testify on his own behalf." (citation omitted)). However, the right to testify "is not without limitation." *Rock*, 483 U.S. at 55; *see, e.g., United States v. Scheffer*, 523 U.S. 303, 308 (1998) ("A defendant's right to present *relevant* evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus bow to accommodate other legitimate interests in the criminal trial process." (emphasis added; internal footnote, citations, and quotation marks omitted));

13

No. 11-40376

*United States v. Pierce*, 959 F.2d 1297, 1304 n.13 (5th Cir. 1992) (concluding on appeal from the denial of relief under 28 U.S.C. § 2255 that defendant's contention that his counsel's "refusal to allow him to testify at the suppression hearing . . . denied him his constitutional right to testify on his own behalf" was without merit since "even assuming that the testimony would have been admissible," defendant had "failed to demonstrate the relevance of the issue, or any resulting prejudice"); *United States v. Winkle*, 587 F.2d 705, 711 (5th Cir. 1979) (concluding on direct appeal that it is "well within [the district court's] discretion concerning questions of relevance" to exclude a criminal defendant's testimony when it is "irrelevant").  Indeed, "[n]umerous . . . procedural and evidentiary rules control the presentation of evidence and do not offend the defendant's right to testify."  *Rock*, 483 U.S. at 55 n.11 (citations omitted); *see, e.g., Nix v. Whiteside*, 475 U.S. 157, 173-74 (1986) (holding that "there is no right whatever—constitutional or otherwise—for a defendant to use false evidence," and since there is "no *permissible* choice to testify falsely," a criminal defendant is deprived of "neither his right to counsel nor the right to testify truthfully" by "defense counsel tak[ing] steps to persuade [him] to testify truthfully," or risk counsel's withdrawal).

Here, after conferring with Flores-Martinez, defense counsel informed the district court that Flores-Martinez *only* wanted to testify regarding matters that had been excluded by the motion *in limine* and requested reconsideration of the ruling.  There was no indication that Flores-Martinez desired to testify on any other subject; rather, his counsel directly stated to the contrary in his reconsideration request. Indeed, even when Flores-Martinez was being removed from the courtroom, his outburst to the jury was regarding the excluded topic of his father's military service.

Moreover, the district court granted Flores-Martinez a bill of exceptions on defense counsel's motion.  He did not take this opportunity to inform the

14

district court of what he would have testified about; instead, *he refused to speak*, prompting defense counsel's request to make a proffer. The district court permitted the proffer, and as earlier stated, the only matters discussed were those excluded by the district court's *limine* order. Thus, the situation, as unequivocally made known to the district court at the time, was that Flores-Martinez desired to testify only about matters the court had already ruled irrelevant. Flores-Martinez does not contend that he had a constitutional right to testify to irrelevant matters, and the law, as discussed above, is to the contrary.[5]

In his brief filed with us on direct appeal, Flores-Martinez argues for the first time that he *could have* testified regarding subjects not covered by the *limine* order. No objection was raised in this regard below; indeed, the consistent indication to the district court was that Flores-Martinez *only* wanted to testify about the matters excluded by the *limine* order. *See United States v. Olano*, 507 U.S. 725, 731 (1993) ("'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" (citation omitted)); *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009). Accordingly, we review any subjects that Flores-Martinez could have testified to other than those covered by the proffer and *limine* order for plain

---

[5] After having been previously removed from the United States subsequent to a felony conviction, Flores-Martinez was found in the United States without the consent of the Attorney General or an excuse obviating such consent. *See* 8 U.S.C. § 1326. Since the matters discussed in the proffer are irrelevant to the crime of illegal reentry, *see United States v. Treviño-Martinez*, 86 F.3d 65, 68 (5th Cir. 1996), and a criminal defendant has no right to present irrelevant testimony, *see, e.g., Pierce*, 959 F.2d at 1304 n.13, we cannot say that the district court committed error by not allowing Flores-Martinez to testify to the jury regarding these matters.

error.[6] *See* FED. R. CRIM. P. 52(b); *United States v. Ricardo*, 472 F.3d 277, 285 (5th Cir. 2006) (applying plain error review on direct appeal to defendants' argument that the district court's statements "impermissibly chilled their constitutional right to testify" because defendants had failed to object at trial); *United States v. Bourgeois*, 423 F.3d 501, 506 (5th Cir. 2005) (applying plain error review on direct appeal to each of defendant's constitutional challenges since none were raised in the district court); *United States v. Gourley*, 168 F.3d 165, 171 n.10 (5th Cir. 1999) (applying plain error review to defendant's right to testify argument raised for the first time on direct appeal). Under the plain error standard, Flores-Martinez must show that (1) it was error to deny him his right to testify, (2) the error was "clear or obvious, rather than subject to reasonable dispute," and (3) the error affected his "substantial rights, which in the ordinary case means . . . that it 'affected the outcome of the district court proceedings.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citing *Olano*, 507 U.S. at 732-34). Even if the first three prongs are met, we will consider exercising our discretion to remedy the error only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation and internal quotation marks omitted).

---

[6] Flores-Martinez argues that he properly preserved his claim regarding the denial of his right to testify, notwithstanding the absence of a formal objection at trial. On that basis, he argues that *de novo* review applies to this constitutional question. We have held that an objection to the violation of a constitutional right is not inadequate merely because of the failure to use "the magic words, 'I object.'" *United States v. Johnson*, 267 F.3d 376, 380 (5th Cir. 2001). However, notwithstanding the absence of "magic words," given (1) defense counsel's representation to the district court that Flores-Martinez only wanted to testify about excluded matters, (2) Flores-Martinez's outburst regarding his father's military service, and (3) the proffer, we cannot agree that Flores-Martinez properly preserved his claim as to matters outside those covered by the proffer and limine order. *See United States v. Potts*, 644 F.3d 233, 236 (5th Cir. 2011), *cert. denied*, 80 U.S.L.W. 3563 (U.S. Apr. 2, 2012) (No. 11-6414) ("Ordinarily, we review a constitutional question *de novo*. If, however, a defendant—as here—does not properly preserve his claim, we review for plain error." (internal citations omitted)).

No. 11-40376

Here, we have more than the mere "failure to object" that is so often the subject of plain error review. Instead, we have a contention on appeal that directly contradicts the representation made at trial that Flores-Martinez wanted to testify *only* about excluded matters. Despite Flores-Martinez's blanket assertion now that he would have testified to other matters, when the district court granted Flores-Martinez the opportunity to make a bill of exceptions, he refused to talk. Then, when his defense counsel made his proffer in Flores-Martinez's presence summarizing what Flores-Martinez would have testified to, the entirety of the proffer only concerned matters that had been excluded as irrelevant.[7]

Even assuming *arguendo* that the district court erred by not permitting Flores-Martinez to testify regarding the (still) unstated matters, by no means was the error "clear or obvious," as required for plain error review. *Id.* It is undisputed that the right to testify is a fundamental and personal constitutional right that only the criminal defendant himself may waive. *See, e.g., United States v. Hung Thien Ly*, 646 F.3d 1307, 1313 (11th Cir. 2011) ("Although often framed as a right to testify, it is more properly framed as a right to choose whether to testify. . . . This right to choose is personal as well as fundamental, and the defendant must make this decision himself." (citing *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc))); *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002). However, it is not at all clear or

---

[7] Indeed, if his outburst to the jury regarding his father's military service was a brief preview of the testimony he would have given, the suggested practice of permitting Flores-Martinez to take the stand to see if he would try to testify to anything other than excluded matters, while usually a good approach, probably would have been imprudent here since he had repeatedly shown that he neither respected nor accepted the district court's *limine* order. In fact, given defense counsel's representation that Flores-Martinez only wanted to testify regarding excluded matters and Flores-Martinez's repeated defiance of the *limine* order, the district may have concluded—quite reasonably—that permitting Flores-Martinez to take the stand would infect the integrity of the trial so that only a bill of exceptions or a proffer would be advisable under the circumstances.

obvious that the district court must second-guess defense counsel's representation to the court that the defendant would only testify regarding excluded matters in order to ascertain whether the defendant knowingly and voluntarily waived his right to testify regarding any relevant, non-excluded matters. *See, e.g., United States v. Babul*, 476 F.3d 498, 500 (7th Cir. 2007) ("[C]hoices about trial practice and management . . . are committed to counsel, not only because they are numerous . . . but also because they are the sort of choices for which legal training and experience are most helpful. A defendant may act as his own advocate, but when he chooses to have a lawyer conduct the defense, the lawyer gets to *conduct* the defense and not just whisper advice in the defendant's ear each time a decision must be made." (citation omitted)); *United States v. Ortiz*, 82 F.3d 1066, 1071-1072 (D.C. Cir. 1996) (holding on direct appeal that the "district court properly relied on counsel's assertion that [defendant] had acquiesced in her advice not to testify and made no inquiry of [defendant] himself," where "[n]othing in the trial record gave the district court any reason to doubt" the representation by defendant's counsel that defendant had waived his right to testify); *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993) ("Although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to have him testify. The trial court has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred." (internal citations and quotation marks omitted)).

Flores-Martinez points to no authoritative precedent for the proposition that a district court may not rely upon counsel's representations—made in the defendant's presence—as to the defendant's intentions in this regard. Indeed, some courts have even suggested that such a court inquiry may be inappropriate. *See Hung Thien Ly*, 646 F.3d at 1314-17; *Siciliano v. Vose*, 834 F.2d 29, 30 (1st Cir. 1987) ("To require the trial court to follow a special

18

No. 11-40376

procedure, explicitly telling defendant about, and securing an explicit waiver of, a privilege *to* testify . . . could inappropriately influence the defendant to waive his constitutional right *not* to testify, thus threatening the exercise of this other, converse, constitutionally explicit, and more fragile right." (citations omitted)). Thus, we conclude that the district court did not plainly err in relying upon the representation by defense counsel that the defendant wanted to testify *only* to irrelevant matters.[8]

We note also that the crime of illegal reentry is not a specific intent crime, and a mistake of law is thus not a defense. *See Treviño-Martinez*, 86 F.3d at 68 ("[T]he language of the statute [8 U.S.C. § 1326] belies the existence of a requirement of specific intent. . . . Congress did not impose a requirement of specific intent anywhere in the statute nor did it provide that an alien's

---

[8] Flores-Martinez argues that the right to testify is a constitutional right so basic to a fair trial that its infraction can never be treated as harmless error. On that basis, he contends that the denial of the right to testify is a structural error (as opposed to a trial error) and that it should be reversible *per se* and not subject to harmless error analysis. First and foremost, we conclude no error was committed under the facts here presented. Further, "[o]nly in rare cases has [the Supreme] Court held that an error is structural, and thus requires automatic reversal." *Washington v. Recuenco*, 548 U.S. 212, 218 (2006) (footnote omitted). Flores-Martinez points to no authority supporting his argument that such an error is structural.

In any event, we need not decide this question because "[h]armless error . . . is a rule of constitutional law, whereas plain error is a rule of appellate procedure. An error not susceptible to harmless error review is nevertheless susceptible to plain error review if the defendant did not object at trial." *United States v. Phipps*, 319 F.3d 177, 189 n.14 (5th Cir. 2003) (citing *United States v. Shunk*, 113 F.3d 31, 36 (5th Cir. 1997)). Indeed, just because a structural error "requires reversal when preserved does not mean that it likewise requires reversal when not preserved." *Shunk*, 113 F.3d at 36 (citing *United States v. Jobe*, 101 F.3d 1046, 1061-62 (5th Cir. 1996)). Even assuming there was error, since we conclude that Flores-Martinez cannot show the error was "clear or obvious," we need not address whether a structural error alleviates a defendant's burden under plain error to show prejudice. *See United States v. Marcus*, 130 S. Ct. 2159, 2164-65 (2010) (pointing out that previous Supreme Court cases addressing the plain error standard have "noted the possibility that certain errors, termed 'structural errors,' might 'affect substantial rights' regardless of their actual impact on an appellant's trial," but disposing of the case without resolving the question because the error at issue was "non-'structural'"); *Puckett*, 556 U.S. at 140 ("This Court has several times declined to resolve whether 'structural errors'—those that affect 'the framework within which the trial proceeds,'—automatically satisfy the third prong of the plain-error test. Once again, we need not answer that question . . . ." (citations omitted)).

No. 11-40376

reasonable belief that he was legally entitled to reenter the United States is a defense to criminal liability."). Accordingly, not only is Flores-Martinez's belief that he was entitled to reenter the United States because of his father's military service not a defense, but also his "innocent" mental state is irrelevant. Thus, the argument that he was denied the opportunity to have the jury "'eyeball' him" during his testimony to determine his mental state is unavailing. *See id.*

AFFIRMED.