# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 16-31184

————

United States Court of Appeals
Fifth Circuit

**FILED**

October 26, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

versus

WALTER PORTER,
  Also Known as Moonie Porter, Also Known as Urkel Porter

      Defendant–Appellant.

————

Appeal from the United States District Court
for the Eastern District of Louisiana

————

Before SMITH, CLEMENT, and COSTA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Walter Porter appeals his conviction by contesting orders finding him competent to stand trial and denying his request for expert funding and motions to continue. We affirm.

### I.

Nemesis Bates offered Porter $20,000 to murder Christopher Smith.

No. 16-31184

Porter accepted and killed Smith. Porter and Bates were charged with violating 18 U.S.C. § 1958(a) (Solicitation to Commit a Crime of Violence), 18 U.S.C. § 924(j) (Causing Death Through the Use of a Firearm), and 18 U.S.C. § 924(o) (Conspiracy to Possess a Firearm). Before that indictment, Porter was indicted for RICO violations in a second case and for armed bank robberies in a third.[1] Two of those three cases were assigned to Judge Sarah Vance and the other to Judge Martin Feldman, both in the Eastern District of Louisiana.[2]

In April 2014, Porter's attorneys[3] moved to declare him incompetent in all three cases.[4] For efficiency, Judges Vance and Feldman conducted the competency proceedings together.[5] Defense counsel submitted affidavits explaining their difficulties communicating with Porter. Counsel also offered a report from psychiatrist Brushnan Agharkar, who, after three interviews with Porter, provisionally diagnosed him with Schizoaffective Disorder.[6] Agharkar also

---

[1] At the government's request, Judge Vance dismissed the bank robbery charges after Porter was convicted of the murder-for-hire and RICO charges.

[2] The murder-for-hire charges were docketed as No. 13-066; the RICO charges as No. 12-001; and the bank robbery charges as No. 12-198.

[3] The same two attorneys eventually represented Porter in all three cases, at least by the time of the June 2015 competency hearing at issue.

[4] In the RICO case, Porter's attorney moved for a psychiatric examination. He withdrew that request the next day after meeting again with Porter. The attorney explained that Porter "clearly ha[d] a rational and factual understanding of the proceedings against him," and the behavior that initially worried him was just the "result of stress related to the potential consequence of the . . . legal matters . . ." But about four months later, a different set of counsel (the counsel that would represent Porter throughout the competency proceedings) requested that the court declare Porter incompetent to stand trial. Competency proceedings commenced.

[5] Some actions discussed *infra* were taken only by one judge, but others were taken jointly by both. We refer to "the district court" or "the court" when the judges acted jointly and each judge by name when he or she acted individually.

[6] Agharkar describes this as a "psychotic disorder in which the person may have delusions, hallucinations and thought disorganization as well as mood swings consistent with Bipolar Disorder."

suggested that Porter suffered from a neurocognitive disorder or an intellectual disability.

In response, the government requested the opportunity to conduct a psychiatric or psychological examination in accordance with 18 U.S.C. §§ 4241(a) and (b) and 4247(b) and (c). The district court agreed in April 2014, and Porter was transported to the Federal Medical Center at Devens ("Devens") in Massachusetts. Devens's forensic psychologist, Shawn Channell, examined Porter and submitted a report in August 2014. Channell provisionally recommended that Porter was not competent and that he remain at Devens for further evaluation and treatment. Channell explained that he needed more time to decide whether Porter was malingering symptoms[7] or genuinely suffering from a mental illness.

At a joint competency hearing in October 2014, the court determined that Porter was not then competent to stand trial and committed him for further evaluation and treatment under 18 U.S.C. § 4241(d). In April 2015, after further evaluating Porter, Channell submitted a new report to the court in May 2015. Channell opined that Porter was malingering symptoms of psychosis and recommended that he be found competent to stand trial.[8] The court scheduled a second competency hearing for July 2015.

---

[7] According to Agharkar, "[m]alingering is the intentional production of symptoms for secondary gain."

[8] Channell did diagnose Porter with Antisocial Personality Disorder, a condition "categorized by a history of breaking the law, irresponsibility, impulsivity, irritability, aggressiveness, deceitfulness, and a lack of remorse." He testified that such a disorder, however, "does not render Porter incompetent" because "individuals with personality disorders can mediate their inclinations and beliefs, whereas those who are psychotic have no control over the symptoms that they exhibit." Additionally, "the disorder produces narcissism, which causes individuals to think they always know what is best." Thus, he would "persistently demand that counsel file motions on his behalf even after counsel recommended that the motions are not reasonable or in his best interests."

No. 16-31184

Porter then moved for funding for a neurological evaluation in one of his other pending cases.[9] Judge Feldman denied that motion on the merits. Porter next moved for reconsideration of that motion in all three cases, which Judge Feldman again denied on the merits in the case where Porter filed the original motion. Judge Vance denied the motion for reconsideration in the other two cases—including the instant case—because the original motion was filed in a different case.

Next, Porter moved to continue the second competency hearing, averring that he needed more time for follow-up evaluations with experts and to finish ongoing discovery. The district court denied that motion, observing that Porter already had a follow-up scheduled with Agharkar and that Porter either had received all discovery or had failed to move to compel compliance with any outstanding requests. Undeterred, in June 2015 Porter sought another continuance for similar reasons, which the court again denied.

The second competency hearing was held July 6, 2015, as scheduled. After the hearing, the district court issued a 62-page joint opinion finding Porter competent to stand trial. The court thoroughly described each expert's reports and testimony. It also recounted Porter's records from Devens, transcripts of his previous court appearances, his past criminal records, his juvenile records, his letters to the court, and his mother's medical records.

The court ultimately credited Channell's testimony that Porter was malingering, citing multiple portions of Channell's report. Channell stated that Porter first presented his alleged psychotic symptoms at age thirty-eight, but Schizophrenia normally presents itself in one's early- to mid-twenties.[10]

---

[9] Porter filed the motion in No. 12-001.

[10] Channell further observed that though Porter was previously detained on other charges, officials neither observed nor recorded symptoms of mental illness. In fact, Porter

4

No. 16-31184

Channell also said that the types of hallucinations Porter claimed (visual and command hallucinations) are atypical in schizophrenics. Porter's response to antipsychotic medications further indicated malingering because Porter reported an increase in symptoms when taking the medications. That Porter reported and called attention to his symptoms was also abnormal in schizophrenics and evidenced malingering: A genuinely mentally ill person typically lacks the ability to recognize that he is hallucinating or experiencing delusional thoughts.

Channell concluded that Porter's reported symptoms "are demonstrably absurd because it is extremely unlikely that they could collectively be produced by genuine mental illness." In addition, Channell opined that Porter possesses the ability to cooperate and merely chooses not to. He noted that "Porter was observed routinely interacting normally with inmates and prison staff" during his time at Devens. Porter refused to cooperate only during Channell's competency evaluations.

The court chose not to credit Agharkar's report that he prepared after Porter's release from Devens. Agharkar maintained his previous conclusion that Porter was not competent to stand trial, though "only skimmed" the Devens records, interviewed Porter twice after his release, and spoke with several of Porter's family members. Still, Agharkar "opine[d] that [Porter's] understanding of why those charges were brought, his ability to communicate rationally about the charges and the evidence, and his ability to work with counsel are impaired by his psychotic or neurocognitive disorder." Agharkar averred that Porter's auditory hallucinations were consistent with a psychotic disorder but admitted that the visual hallucinations were atypical. The court

---

received a psychological evaluation when incarcerated as a juvenile, and "testing found no risk for Schizophrenia, organic impairment, or mental deficiency."

refused to credit Agharkar's opinion, explaining that it would have "to accept too many unexplained inconsistencies with such diagnosis: Porter's lack of prior mental illness and sudden onset of symptoms, his befuddling responses to antipsychotic medication, his calling attention to his symptoms, and the inconsistent manner in which he has exhibited symptoms."[11]

The court also considered Porter's actions during the various judicial proceedings. Acknowledging that Porter interrupted the proceedings multiple times, the court emphasized that almost all those outbursts addressed the immediate proceedings.[12] Porter "voiced factual disagreements with matters currently under discussion" and "remained engaged and attentive." In other words, Porter "left no doubt that he understood the matters under discussion and was capable of voicing his disagreement with factual testimony."[13]

The district court ultimately concluded that Porter was competent because he was "not presently suffering from a mental illness or defect." Erring on the side of caution, however, the court moved to the other part of the competency analysis: whether Porter was capable of consulting with his lawyers with a reasonable degree of rational understanding and whether he

---

[11] The court also addressed Agharkar's suggestion that Porter might suffer from an intellectual disability. It noted that Porter's medical records undermine that conclusion. As a juvenile, Porter underwent several IQ tests and "scored as high as 90 on a full-scale IQ test." Channell observed that one cannot fake a higher IQ.

[12] The court cited two examples. First, "Porter took issue with statements made by Dr. Channell. . . . Porter stated that Dr. Channell exaggerated the length of one of his interviews with Porter. Porter also stated that he would never take the prescription drug Geodon again when it was mentioned." Second, "when Porter was admonished for speaking out during the competency hearing, Porter apologized, stating, 'I'm sorry,' and/or became silent in response to Court warnings. The Court observed that, on several occasions, Porter likewise became silent when prompted by defense counsel . . . He never had to be removed from the hearing. Clearly, Porter can be interrupted and redirected."

[13] *See United States v. Ghane*, 593 F.3d 775, 783 (8th Cir. 2010) ("Our review of the transcript reveals that [defendant's] interruptions were not related to his delusions but were related to the testimony being offered at the time . . . .").

## No. 16-31184

possessed a factual and rational understanding of the proceedings. The court found that Porter could reasonably consult with his attorneys and did possess a factual and rational understanding of the proceedings.[14]

The jury convicted on all counts. The district court sentenced Porter to life in prison on two counts and 240 months' imprisonment on the other. Porter timely appealed the competency finding, the denial of his request for funding, and denials of his motions for continuance.

## II.

Porter challenges the finding that he was competent to stand trial. Title 18 U.S.C. § 4241(a) allows a district court to grant a hearing to determine competency where "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent." The court must determine "by a preponderance of the evidence" whether "the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.* § 4241(d). "A district court can consider several factors in evaluating competency, including, but not limited to, its own observations of the defendant's demeanor and behavior; medical testimony; and the observations of other individuals that have interacted with the defendant." *United States v. Simpson*, 645 F.3d 300, 306 (5th Cir. 2011). A defendant is competent where he has "the present ability to consult with his lawyer with a reasonable degree of rational understanding and [has] a rational as well as factual understanding of the proceeding against him." *Id.* (cleaned up).

We review a district court's competency determination using a "species

---

[14] We discuss these findings in more detail *infra*.

No. 16-31184

of clear error" review. *Id.* (internal quotation marks omitted). "[A]fter re-analyzing the facts and taking a hard look at the trial judge's ultimate conclusion, we will reverse only if the finding was clearly arbitrary or unwarranted." *Id.* (cleaned up).

## A.

To support his contention that he possessed a mental defect or disease rendering him incompetent to stand trial, Porter mainly offers his own expert's conclusions. But "[i]t is not our task, as an appellate court, to relitigate the battle of the experts." *Id.* The district court had ample evidence supporting its competency determination, largely as a result of its early decision provisionally to deem Porter incompetent and commit him to a federal facility for further evaluation and treatment.

Some evidence might suggest that Porter suffers from a mental handicap, including his pressured speech,[15] perseveration,[16] refusal to cooperate with his lawyers, belief that his lawyers were engaged in a conspiracy against him, and outbursts during various proceedings. But the record supports the district court's conclusion that Porter was malingering. Both experts have testified that a sudden onset of psychological symptoms in one's thirties is rare, and there is no indication of mental illness in any of Porter's criminal files. There can, of course, be exceptions to this rule, but other evidence suggests malingering. Porter's awareness of and need to call attention to his symptoms is unusual in a person suffering from a mental illness. The multitude of symptoms Porter reported do not usually occur together and do not indicate any

---

[15] Channell explained that pressured speech "means [Porter] was talking rapidly about . . . things."

[16] Channell described perseveration as "a reference to when [Porter] would talk about his case, he has a certain area of focus that he returns to again and again."

No. 16-31184

specific illness.  He had no positive response to antipsychotic medicine, claiming instead that his symptoms worsened while he was on the medication.[17]  We cannot say that the district court's considered decision that Porter was malingering and not presently suffering from a mental disease was "clearly arbitrary or unwarranted."

### B.

The conscientious district court went on to address the remaining criteria for incompetency—whether Porter possessed both the "ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceeding [ ] against him." *Id.* (internal quotation marks omitted).  Porter's theory boils down to this: His refusal to cooperate must mean that he is not able to communicate with and help his lawyers.  The district court acknowledged that Porter was a difficult client but concluded that Porter possessed the ability to communicate with and assist his attorneys—he just chose not to.  The court explained that the attorneys might need to exert more effort and patience, but Porter was capable of cooperating.  Porter's attorneys respond that none of them has successfully secured his cooperation and that Channell, the government psychologist, was likewise unable to make Porter cooperate for certain screening tests and conversations.

---

[17] Porter also contends that the court reversibly erred by failing to consider the affidavits or testimony of Porter's defense attorneys.  We disagree.  The court is free to consider a large swathe of information to determine competency, but Porter points to no case *requiring* the court to consider any specific evidence.  He cites *Medina v. California*, 505 U.S. 437 (1992), but that case merely states that "a defendant's inability to assist counsel *can* . . . constitute probative evidence of incompetence, and defense counsel will often have the best-informed view of the defendant's ability to participate in his defense."  *Id.* at 450 (emphasis added).  Even so, by Porter's own admission, the district court's lengthy opinion notes and describes at least one of the affidavits submitted in the initial motion requesting an order declaring him incompetent.

No. 16-31184

Although his court-appointed attorneys' frustrations are understandable, refusal to cooperate and inability to cooperate are two distinct problems. And the district court had ample evidence to conclude that the former is the problem here. To take just one example, Porter's expert—who Porter says should be credited over Channell—was able to conduct tests that required Porter's cooperation, but Channell was not. And now, Porter urges this court to reject Channell's findings because he could not conduct full tests.[18] But instead of suggesting that Channell's report is wanting, this indicates that Porter can cooperate when he wants to. This is further supported in that Porter was amiable and communicated with other patients and that Channell eventually obtained some answers to questions from Porter. Additionally, Porter told his mother that he was purposefully not cooperating. Given this record, we cannot say that the district court's conclusion that Porter possesses the ability to cooperate was "clearly arbitrary or unwarranted."

The district court also determined that Porter had a factual understanding of the proceedings because Porter understood his charges, was aware of the potential sentences, and submitted various, relevant legal documents to the court. It further noted that his outbursts during proceedings were on point. Porter implicitly concedes that factual point but contends that he lacks the requisite rational understanding of the facts, as evidenced by his belief that his lawyers are conspiring against him.

Porter's misconception about his attorneys does not mean that he lacks

---

[18] *See* Appellant's Br. at 31 ("Channell was never able to conduct a psychological assessment for malingering because Porter stopped meeting with him. Agharkar, on the other hand, spent 14 hours over several visits with Porter and was able to assess both malingering and preliminary indications of neurocognitive impairment."); Tr. Competency Hr'g at 6669 ("[A]lthough it took [Porter] some time, he did cooperate with me[, Agharkar,] through all my screenings.").

a rational understanding of his legal proceedings. As the district court explained, Porter's long history with the criminal justice system has made him distrust the government and his attorneys. "[T]he Government once sought the death penalty against him; his counsel has refused to file motions he has requested they filed; and counsel undoubtedly talked to him and the Government about plea negotiations." Even so, distrust or "disagreement with one's attorney does not make one mentally unable to consult." *United States v. Ghane*, 593 F.3d 775, 781 (8th Cir. 2010). Porter offers no other evidence indicating that he lacks a factual and rational understanding of the charges and consequences he faces or that he is unable to assist in his defense. The court's conclusion that Porter possesses both a factual and rational understanding of the proceedings is not "clearly arbitrary or unwarranted." In sum, the court did not reversibly err in finding Porter competent to stand trial.

## III.

Porter challenges the denial of his request for funding for a neuropsychological evaluation. That denial is not properly before this panel. Porter filed his request in No. 12-001. When it was denied, he filed for reconsideration in all three of his pending cases, including the case before us, No. 13-066. Judge Vance denied the motion to reconsider the request in No. 13-066 on the basis that the original motion was filed in another case. Though Judge Vance had previously granted Porter's motion to adopt all filings in No. 12-001 and No. 12-198 for purposes of the October 2014 competency proceeding, nothing in the record indicates that that order applied indefinitely. We make no ruling on the denial of funding.

## IV.

Porter contends that the district court erred by denying his motions for a continuance of the joint competency hearing. We review a denial of a

continuance for an abuse of discretion. *United States v. Messervey*, 317 F.3d 457, 461 (5th Cir. 2002). We look to the totality of the circumstances to decide whether the court abused its discretion, considering "the amount of time available for preparation; defendant's role in shortening the time needed; the likelihood of prejudice from denial; and the availability of discovery from the prosecution." *Id.* "[T]he movant must show that the denial resulted in specific and compelling or serious prejudice."[19]

Porter twice moved for a continuance.[20] In his first motion, filed June 5, 2015, Porter averred that he needed more time in case the court granted funding for a neuropsychological evaluation. He also asked for more time to follow up with his expert and complete ongoing discovery. As the court denied the funding request in a separate order, it refused to grant a continuance on that basis.[21] It also rejected Porter's contention that he needed more time to follow up with his expert, noting that Porter had such a follow-up scheduled for before the hearing date. Finally, it disagreed that Porter needed more time to finish ongoing discovery, explaining that he had either "received the subpoenaed information or . . . failed to move to compel compliance."

In Porter's second motion, filed June 29, 2015, he alleged that his counsel and witnesses lacked sufficient time to prepare for the competency hearing and that the government had yet to produce the documents Porter requested. The court again denied Porter's motion, stating that "[c]ounsel and witnesses have had ample time to prepare for the hearing and to protect the scheduled date

---

[19] *United States v. Francisco*, 497 F. App'x 412, 418 (5th Cir. 2012) (quoting *United States v. Barnett*, 197 F.3d 138, 144 (5th Cir. 1999)).

[20] Both requests were filed in the instant case (No. 13-066) but were jointly denied.

[21] The court noted that Porter only "filed his motion for funding in case No. 12-001," but he filed his motion for a continuance in the instant case (No. 13-066) based on this motion for funding.

from any conflicts."[22]

It was well within the district court's discretion to refuse to grant a continuance in both instances. Regarding the first motion, counsel had sufficient time to review the produced discovery, and there was no need to postpone the competency hearing to wait for results from the neuropsychological evaluation because funding for such testing was denied. As to the second motion, Porter had two months from the date the government notified the court that it no longer deemed Porter incompetent to prepare for the second competency hearing. Porter's expert was already familiar with Porter's case and had examined him several times already.[23] Agharkar was able to interview Porter's family members and prepared a report before the hearing. In fact, Agharkar acknowledged that he had "enough time" to "reach an opinion."

Moreover, by the time of Porter's second motion, the government had complied with Porter's request for discovery by producing between 700 and 900 pages of documents. Though Porter claims that documents trickled in and Devens did not produce all documents the subpoena required, the court explained that Porter was not currently entitled under the subpoena to any

---

[22] In his second motion to compel and throughout his brief on appeal, Porter complained that Agharkar had little time to prepare because he was testifying in Florida for another defendant in the immediate days leading up to Porter's competency hearing. Agharkar's scheduling conflict arose *after* Porter's competency hearing was scheduled and after Porter filed his first motion to continue. Despite that late conflict, the court decided to keep the hearing open for a couple extra days to enable Agharkar to travel back from Florida and testify. The court also explained that it had tried to contact the Florida court when Porter filed his second motion to continue to "see if we could work out an accommodation." It was unable to do so, however, because Porter had provided incorrect information about which Florida court was involved. It also noted that Porter's attorneys "obviously didn't" try to contact the Florida court themselves to clear up the conflict. Nor did Porter's attorneys try to subpoena Agharkar.

[23] By the time of the competency hearing, Agharkar had spent "around 14 hours" with Porter.

additional documents.[24]  And, even so, Porter fails to "show that the denial resulted in specific and compelling or serious prejudice."  *Francisco*, 497 F. App'x at 418 (quoting *Barnett*, 197 F.3d at 144).  At no point during this appeal has Porter identified evidence that Agharkar would have caught and included in his report given more time.  The district court did not abuse its discretion.

V.

Porter asserts that the denials of his motions for funding and a continuance amounted to a denial of his right to expert assistance.  "[T]he [government] must provide an indigent defendant with access to a mental health expert who is sufficiently available to the defense and independent from the prosecution to effectively 'assist in evaluation, preparation, and presentation of the defense.'"  *McWilliams v. Dunn*, 137 S. Ct. 1790, 1793 (2017) (quoting *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985)).  Porter maintains that the denial put him in the same position as the *McWilliams* defendant because his expert did not have time to offer a "full and informed opinion" on account of the late production of documents and the lack of neurological testing.

---

[24] The parties have a protracted history of disputing whether Devens complied with discovery requests.  Porter first claimed Devens failed to comply in November 2014.  He filed a motion requesting a Rule 17 subpoena for various items that was denied by Judge Vance in February 2014.  Without objection by the government, the court granted another Rule 17 request on May 5, 2015.  Porter claimed that the government failed to comply with that subpoena and filed a motion to compel at the same time he filed his first motion for a continuance.  The court again denied Porter's motion to compel, determining that the requested disclosures were not necessary or obviously relevant at that time.

Another motion was filed *ex parte* on June 29, 2015.  The court refused to entertain the *ex parte* motion and required the government be notified of the motion and allowed a chance to respond.  Once all parties were notified and had responded, the court denied the motion in part and granted it in part.  It determined that, with one exception, Devens had complied with the subpoena.  The court found that a copy of a competency booklet Devens used to test Porter was the only outstanding document to which Porter was entitled.  Devens had originally produced Porter's answers to the booklet's questions, but not the booklet itself.

No. 16-31184

As explained, the question whether the district court erred by denying funding is not before us, and the court did not abuse its discretion by denying the motions to continue.  We cannot say that the combination denied Porter the right to expert assistance.  Agharkar had ample time to meet with Porter, evaluate him, review his records, and prepare for the competency hearing.  Agharkar had sufficient information to conclude that Porter was likely suffering from brain damage that rendered him incompetent.

Agharkar ably explained the reasons for his conclusion and how brain damage would affect Porter's fitness to stand trial.  This starkly contrasts with *McWilliams*, in which the defendant was examined by a volunteer expert who was not available to assist him in evaluation, preparation, or presentation of the defense.[25]  In sum, Agharkar was sufficiently prepared "to effectively 'assist in evaluation, preparation and presentation of [Porter's] defense,'" *McWilliams*, 137 S. Ct. at 1793 (quoting *Ake*, 470 U.S. at 83), and the denials did not combine to strip Porter of the right to effective expert assistance.

The order finding that Porter is competent to stand trial and the denials of his requests for funding and motions for continuance are without error.  The judgment of conviction is AFFIRMED.

---

[25] *See McWilliams*, 137 S. Ct. at 1800–01 ("Neither [the volunteer expert] nor any other expert helped the defense evaluate [the volunteer expert's] report or McWilliams' extensive medical records and translate these data into a legal strategy.  Neither [the volunteer expert] nor any other expert helped the defense prepare and present arguments that might, for example, have explained that McWilliams' purported malingering was not necessarily inconsistent with mental illness. . . .").