# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 12, 2023

Lyle W. Cayce
Clerk

―――――――――

No. 23-30036

―――――――――

United States of America,

*Plaintiff—Appellee*,

*versus*

Randall Lenard Berry,

*Defendant—Appellant*.

―――――――――――――――――――――――――

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CR-68-1

―――――――――――――――――――――――――

Before Stewart, Dennis, and Southwick, *Circuit Judges*.

Per Curiam:[*]

This is an expedited interlocutory appeal from a district court order issued pursuant to 18 U.S.C. § 4241(d) granting the Government's motion for an additional four-month period of mental health evaluation and treatment to determine whether the defendant could attain competency to stand trial. For the reasons explained below, we AFFIRM the district

―――――――――――――――――

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30036

court's order and REMAND for further proceedings consistent with this opinion.

## I. FACTUAL & PROCEDURAL BACKGROUND

Randall Lenard Berry was arrested on July 17, 2020, for allegedly robbing the First Bank and Trust in New Orleans, Louisiana. According to the Criminal Complaint and supporting affidavit, Berry entered the bank around 10:15 a.m. in plain street clothes that appeared to be dirty. He did not attempt to conceal his identity, and he was not wearing gloves. He then began walking slowly toward the counter, dragging his feet as if he was elderly or disabled. When he reached the counter, he slipped the bank teller a handwritten note which read: "This is a robbery. I want 15 thousand Dollars or I will shoot you and Every one in here this is a robbery so don't Play Know games cause I will kill my gun is in my Pocket [sic]." The teller hit the panic button as she opened the cash drawer to show Berry that it was empty. A second teller then accompanied the first teller to the vault to get cash. The first teller put $1,100 in U.S. currency and a dye pack in a white envelope and gave it to Berry. Berry took the envelope and exited the bank but when the dye pack exploded, he jumped and ran back toward the bank, where he was apprehended by officers.

Berry was charged with a one-count indictment under 18 U.S.C. § 2113(a), arraigned, and remanded to the custody of the St. Bernard Parish Jail. In July 2021, Berry's counsel moved for a psychiatric evaluation and the magistrate judge ordered that he begin receiving monthly mental health evaluations and treatment in jail. A competency hearing was then held in December 2021, and the magistrate judge determined that Berry was still incompetent to stand trial. In April 2022, Berry moved to dismiss his case and for his immediate release on grounds that the Government violated the

Insanity Defense Reform Act ("IDRA")[1] and the Speedy Trial Act ("STA")[2] by failing to hospitalize him within four months of his incompetency determination to determine whether his competency could be restored to stand trial. Consequently, the magistrate judge ordered that Berry undergo competency restoration efforts at the Federal Medical Center in Butner, North Carolina ("FMC Butner") where he was transported and admitted in June 2022. After the initial four-month evaluation period expired in October 2022, the Government moved over Berry's objection for an additional four-month evaluation period on grounds that "there [was] a substantial probability that [Berry would] be restored to competency in the future."

The district court conducted a hearing on the Government's motion in November 2022 and heard testimony from Dr. Allyson Sharf, the forensic psychologist assigned to Berry's case at FMC Butner. Dr. Sharf testified that Berry was acutely mentally ill and suffered from schizophrenic delusions such as being the President of the United States and having connections to the Chinese government. She further testified that Berry often hallucinated, yelled profanities, and was generally hostile and threatening. Dr. Sharf testified that once Berry began threatening to kill the medical center staff in August 2022, it was determined that he would be forcibly medicated with antipsychotic medications. According to Dr. Sharf, after Berry received his first injection in September 2022, he began to show gradual signs of improvement as far as his agitation and aggression levels and appeared to suffer from fewer delusions. While Dr. Sharf concluded that Berry was still not competent to stand trial, she opined that there was "a substantial

---

[1] 18 U.S.C. § 4241, et seq.

[2] 18 U.S.C. § 3161, et seq.

probability that he could become competent with more time [and] more medication."

The district court also heard testimony from Berry's psychiatric nurse, Jessica S. Churchill, who treated Berry in the Community Care Hospital in New Orleans where he was judicially committed in 2017. Churchill testified regarding Berry's numerous schizophrenic delusions and the various treatment methods that were used at the hospital. She further indicated that, should the district court deem it appropriate to pursue civil commitment in Louisiana, she would be willing to help facilitate that process.

The district court took the matter under advisement and subsequently issued an order granting the Government's motion and giving it 120 additional days (until February 17, 2023) to evaluate Berry to determine whether he could be restored to competency. Berry moved for clarification of the district court's order extending the evaluation period. In his motion, he argued that the district court's extension of the evaluation period was a constructive denial of his previous motion to dismiss in which he argued that the Government violated the IDRA and the STA by failing to hospitalize him within four months of his initial incompetency determination. However, the district court did not, and still has not, ruled on Berry's original motion to dismiss or his motion for clarification.

Just prior to the expiration of the second evaluation period, Berry moved to file an expedited interlocutory appeal in this court, seeking to vacate the district court's 18 U.S.C. § 4241(d)(2) order and direct his release from Attorney General custody. A panel of this court granted Berry's motion for an expedited appeal. While the expedited briefing period was pending before this court, Dr. Sharf prepared a final forensic report indicating that Berry's mental health was not improving and that there was not a substantial likelihood that he could be restored to competency. She further opined that

No. 23-30036

with respect to the civil commitment requirements under 18 U.S.C. § 4246, Berry met the criteria for a certificate of dangerousness. The Government then proceeded to initiate civil commitment proceedings under § 4246 by filing a certificate of mental disease or defect and dangerousness in the Eastern District of North Carolina. Shortly thereafter, this court heard oral arguments in the expedited appeal.

## II. STANDARD OF REVIEW

A federal court such as this one "has a continuing obligation to assure itself of its own jurisdiction, sua sponte if necessary." *Green Valley Spec. Util. Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020) (en banc). "Legal questions concerning federal jurisdiction are reviewed de novo." *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011). Mootness is a question of jurisdiction that this court also reviews de novo. *See Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 831 (5th Cir. 2023).

We review a district court's ultimate competency determination "using a species of clear error." *See United States v. Porter*, 907 F.3d 374, 380 (5th Cir. 2018) (internal quotation marks omitted). Upon reviewing the facts and "taking a hard look at the trial judge's ultimate conclusion, we will reverse only if the finding was clearly arbitrary or unwarranted." *Id.*

## III. DISCUSSION

On appeal, Berry first argues that contrary to the Government's position, his appeal is not moot. He contends that although the terms of the district court's 18 U.S.C. § 4241(d) order have expired, he remains in custody pursuant to that order. Accordingly, he still has a cognizable interest in the outcome of the case, so his appeal is not moot. He further argues that because his appeal is not moot, this court has jurisdiction to review it under the collateral order doctrine. Finally, he asks this court to exercise its authority to vacate the district court's § 4241(d) order and release him from

Attorney General custody on grounds that his continued detainment violates the IDRA and the STA. We address each of his arguments in turn.

### 1. Mootness

"Whether an appeal is moot is a jurisdictional matter, since it implicates the Article III requirement that there be a live case or controversy." *See United States v. Heredia-Holguin*, 823 F.3d 337, 340 (5th Cir. 2016) (citation omitted). To invoke a federal court's jurisdiction under Article III, "a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). This case-or-controversy requirement continues to exist through all stages of the trial and appellate federal judicial proceedings throughout which "[t]he parties must continue to have a personal stake in the outcome of the lawsuit." *Id.* (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (citing *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). Regardless of how small, as long as the parties have a concrete interest in the outcome of the litigation, the case is not moot. *Id.* (citation omitted).

We agree that Berry's appeal is not moot because he still retains a cognizable interest in its outcome, *i.e.*, his liberty. *See id.* at 340. The specific issue on review in this appeal is whether the district court erred in extending Berry's detention by issuing the § 4241(d) order, and since Berry remains in custody pursuant to that order, a live controversy remains. *Id.*; *see also United States v. Boigegrain*, 155 F.3d 1181, 1185 (10th Cir. 1998) ("Because the defendant is appealing his commitment pursuant to section 4241(d), it is his release from that commitment, if anything, that would moot this appeal."); *United States v. Mahoney*, 717 F.3d 257, 263–64 (1st Cir. 2013) (reasoning that

the district court's order holding that it was unlikely that the defendant would attain competency in the future did not moot the appeal because the defendant continued "to hold a cognizable interest in the review of the initial determination of incompetency because the initial finding triggered a series of events resulting in his continuing confinement").

Moreover, many of the cases the Government cites in support of its mootness arguments are inapposite here. For example, in *United States v. Montelongo*, the defendant's § 4241 appeal was dismissed as moot because the defendant had been released from Attorney General custody—but that is not the case here because Berry remains in Attorney General custody. 32 F.3d 565, 1994 WL 442366, at *1 (5th Cir. 1994) (unpublished) ("This court has been advised by the parties that the examination was to be completed on July 20, 1994, and that the defendant would thereafter be returned to Austin, Texas, by the United States Marshal. The defendant's appeal of the order of commitment is therefore moot and will be dismissed."). The Government also cites *United States v. Sosebee*, 59 F.4th 151 (5th Cir. 2023), in support of its mootness arguments. There, this court held that the appeal was moot because the defendant had completed his sentence and supervised release term and was being held pursuant to a completely separate charge and conviction—again, not the case here. *Id*. at 153 ("While on supervised release, [the defendant] was again convicted of being a felon in possession of ammunition, resulting in revocation of his release as well as a separate conviction . . . again enhanced by the ACCA. [The defendant] challenges the ACCA sentencing enhancements in both cases. We dismiss as moot his claim regarding his first federal conviction and sentence, and we affirm the sentence of his second federal conviction."). In other words, the Government fails to point us to a case or other controlling authority where this court has held that an appeal is moot on the basis that the terms of the § 4241(d) order have expired, despite the fact that the defendant remains in

Attorney General custody and has not yet been civilly committed, even though it has been conclusively determined that he cannot attain competency under the statute. For these reasons, we hold that Berry's appeal is not moot. *See Heredia-Holguin*, 823 F.3d at 340.

### *2. Collateral Order Doctrine*

As a general rule, appellate courts review only "final decisions of the district courts." *See United States v. McKown*, 930 F.3d 721, 725 (5th Cir. 2019) (citing 28 U.S.C § 1291). In a criminal context such as this one, "that 'rule prohibits appellate review until conviction and imposition of sentence.'" *Id*. (quoting *Flanagan v. United States*, 465 U.S. 259, 263 (1984)). The collateral order doctrine, however, provides that "a preliminary or interim decision is appealable . . . when it (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Id*. (citing *Sell v. United States*, 539 U.S. 166, 176 (2003)).

This circuit, along with many others, has concluded that a district court's ruling under 18 U.S.C. § 4241(d) is reviewable as a collateral order. *Id*. This is because "a commitment order conclusively determines a defendant's 'present right to be at liberty prior to trial.'" *Id*. (citation omitted). "Moreover, whether a defendant was denied due process is an important question that is 'completely separate from . . . whether [he] is guilty or innocent of the crimes charged.'" *Id*. at 725–26 (citing *Sell*, 539 U.S. at 176). Additionally, a § 4241(d) order is "effectively unreviewable on appeal from a final judgment because if [the] defendant [was] never tried or [was] tried and acquitted, there would be no appellate review." *Id*. at 726 (citation omitted). Likewise, "if he [was] tried and convicted, no meaningful relief would be available." *Id*.

Because we have held that Berry's appeal is not moot, we likewise conclude that we have jurisdiction to review the district court's § 4241(d) order under the collateral order doctrine. *Id.* at 725. Our appellate review under the collateral order doctrine, however, is limited to the substance of the district court's § 4241(d) order because it is the only order that Berry has appealed at this stage in the proceedings. This distinction is relevant to our analysis because Berry makes numerous arguments on appeal under the IDRA and the STA and although Berry advanced these issues to the district court in his April 2022 motion to dismiss, the district court has yet to rule on that motion. Moreover, the record confirms that the district court has yet to accept Berry's invitation to clarify that its § 4241(d) order encompasses those issues, as Berry urged in his motion for clarification. Accordingly, while we do have jurisdiction under the collateral order doctrine to review the district court's § 4241(d) order, we do not have jurisdiction to address any of Berry's arguments regarding the IDRA or the STA because the district court did not address those issues in the order. *See Magnolia Island Plantation, LLC v. Whittington*, 29 F.4th 246, 252 (5th Cir. 2022) (internal quotation marks and citation omitted) (observing that it is a "well-established general rule" that "this court will not reach the merits of an issue not considered by the district court").

### 3. Competency Determination

"It is a denial of due process to try a defendant for a crime if the defendant is incompetent to stand trial." *See United States v. Ceasar*, 30 F.4th 497, 500 (5th Cir. 2022) (citing *United States v. Flores-Martinez*, 677 F.3d 699, 705–06 (5th Cir. 2012)). Certain safeguards have been enacted by Congress, however, to protect that due process right. *Id.* 18 U.S.C. § 4241(a) permits both the Government and the defendant to move for a hearing to determine the defendant's mental competency before moving forward with criminal proceedings. *Id.* If the district court determines that the defendant is

incompetent to stand trial, "it must commit him to the custody of the Attorney General for hospitalization 'for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward.'" *Id.* (quoting 18 U.S.C. § 4241(d)(1)).

The statute further provides that the defendant may be committed "for one additional reasonable period of time if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward." *Id.* (internal quotation marks omitted) (citing 18 U.S.C. § 4241(d)(2)(A)). If the defendant has not sufficiently improved by the end of the commitment period, "he is not subject to any additional commitment except by way of the civil commitment procedures described in 18 U.S.C. §§ 4246 and 4248." *Id.*; *see also Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("[A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.").

When a district court determines, as it has here, "that an additional commitment period would likely allow for the defendant to regain competency (under subsection (d)(2)(A)), it necessarily concludes, albeit implicitly, that the defendant's mental condition has not yet improved to permit the proceedings to go forward." *Ceasar*, 30 F.4th at 502. In reaching a decision to extend a mental health evaluation period under § 4241(d), a district court may rely on expert testimony and reports as it did in this case.

*See United States v. Joseph*, 333 F.3d 587, 589 (5th Cir. 2003); *see also United States v. Pena*, 429 F. App'x 405, 406 (5th Cir. 2011) (per curiam) (unpublished). In determining whether to grant the Government's motion, the district court heard testimony from Dr. Sharf and considered her forensic report as well. Dr. Sharf testified that, upon receiving the proper medication, Berry's mental state had improved, and his aggression and agitation levels had decreased. She further indicated that Berry's delusions had decreased and that he had been able to join a competency restoration group for the first time during which he participated and behaved appropriately.[3] Dr. Sharf then reiterated, as she concluded in her forensic report, that she believed there was a substantial probability that Berry would be restored to competency in the future if the four-month extension was granted. She further confirmed that if she had any "doubt or reservations about the substantial probability" that Berry could be restored, she would not have agreed to requesting the extension. The district court also heard testimony from Berry's former psychiatric nurse, Churchill, who testified that she disagreed with Dr. Sharf that Berry could be restored to competency to stand trial.

The evidence as a whole, which included testimony from Berry's evaluating psychologist and her accompanying forensic report, adequately supports the district court's order granting the Government's motion for an additional period of mental health evaluation and treatment under § 4241(d). *See Joseph*, 333 F.3d at 589 (concluding that the evidence, which included testimony from a court-appointed psychiatrist, "provided a sound basis for the district court's conclusion that [the defendant] was competent"); *Pena*, 429 F. App'x at 406 ("We conclude that the evidence as a whole—which

_____

[3] Dr. Sharf testified that a competency restoration group is a "psychological educational group that's provided about once a week for an hour, and it goes over various topics that are important to know related to competency to stand trial."

included two psychiatric evaluations and testimony from one of the evaluating psychiatrists at the competency hearing—provided a sound basis for the court's determination that [the defendant] was competent."). Although the district court assigned more weight to Dr. Sharf's testimony than Churchill's because Dr. Sharf was a licensed mental health professional and Churchill had received different training as a registered nurse, it was entitled to make that discretionary call in evaluating the differing testimony presented at the hearing. *See United States v. Wix*, 416 F. App'x 338, 343 (5th Cir. 2011) (per curiam) (unpublished) (noting that "the district court had the discretion to credit or [dis]credit any evidence introduced during the hearing").

In conclusion, we hold that Berry's appeal is not moot, *see Heredia-Holguin*, 823 F.3d at 340, and thus the district court's § 4241(d) order is reviewable under the collateral order doctrine, *see McKown*, 930 F.3d at 725. We further hold that the district court did not clearly err in granting the Government's motion for an additional four-month period of mental health evaluation and treatment, *see Porter*, 907 F.3d at 380, so that it could determine whether Berry could attain competency to stand trial, *see Ceasar*, 30 F.4th at 500; 18 U.S.C. § 4241(d)(2)(A).

At this stage in the proceedings, the circumstances have changed since the district court issued the § 4241(d) order extending Berry's period of mental health treatment and evaluation. Having answered the only question properly before us and because it has now been conclusively determined that Berry is not competent to stand trial and cannot be restored to competency under the statute, we remand to the district court for further proceedings as may be appropriate.

No. 23-30036

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's 18 U.S.C. § 4241(d) order extending the period of mental health treatment and evaluation and REMAND for further proceedings consistent with this opinion.